IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARI BAILEY,                        :
                                   :
          Petitioner               :
                                   :
     v.                            :     CIVIL NO. 3:CV-11-435
                                   :
ISSAC FULWOOD, JR., ET AL.,        :     (Judge Conaboy)
                                   :
          Respondents              :

FILED
SCRANTON

NOV 2 6 2012

PER_____ CR
DEPUTY CLERK

## MEMORANDUM
### Background

Presently pending is a request for federal habeas corpus
relief filed by Ari Bailey (Petitioner) an inmate presently
confined at the  Big Sandy United States Penitentiary, Inez,
Kentucky (USP-Big Sandy).[1]

By way of background, during his prior confinement at
Allenwood United States Penitentiary, White Deer, Pennsylvania
(USP-Allenwood), Bailey initiated a civil action in the United
States District Court for the District of Columbia.  By Memorandum
and Order dated February 15, 2011, the District of Columbia
construed Bailey's action as partially seeking habeas corpus relief
and transferred that portion of his action to this Court.

Bailey thereafter filed a second, separate habeas corpus

---

[1] While his action was pending before this court, Petitioner
was transferred to USP-Big Sandy.  Bailey's involuntary transfer
out of this district does not defeat this court's retention of
jurisdiction.  See Barden v. Keohane, 921 F.2d 476, 477 (3d Cir.
1990).

1

petition with this Court, <u>Bailey v. Martinez, et al.</u>, Civil No. 3:CV-11-461.  By Order dated April 6, 2011, this Court directed that Petitioner's two cases be consolidated pursuant to Federal Rule of Civil Procedure 42(a) and the consolidated matter proceed under <u>Bailey v. Fulwood, et al.</u>, Civil Action No. 3:CV-11-435, which was the initially filed action.[2]  In addition, Warden Martinez of USP-Allenwood was deemed to be the sole Respondent and service of the consolidated petitions was ordered.

## Criminal Proceedings

Bailey was arrested and charged with the December 23, 1993 rape of a dorm student at Howard University in Washington D.C.  <u>See</u> Doc. 48-1, p. 5.  Specifically, it was alleged that Petitioner knocked on the door of the victim's dorm room and asked to used the telephone.  The victim recognized Bailey as someone she had seen around campus and allowed him to use her phone.  After making a phone call, the Petitioner purportedly forced the victim to engage in sexual intercourse.  She suffered bruises to her neck and upper body as a result of the assault.  Bailey denied the rape allegation indicating that the sex was consensual.

At the time of his arrest, Petitioner had an outstanding warrant from the State of Maryland charging him with an unrelated

---

[2]  District of Columbia offenders such as Bailey are considered state prisoners for purposes of the federal habeas corpus statutes.  <u>See</u> <u>Madley v. United States Parole Comm'n</u>, 278 F.3d 1306, 1309 (D.C. Cir. 2002).

rape which had occurred in the City of Baltimore.  See id.  Bailey was convicted of the rape of the Howard University student following a jury trial in the Superior Court for the District of Columbia.  Petitioner was sentenced to a fifteen (15) to forty-five (45) year sentence by the District of Columbia Superior Court.  See Bailey v. United States, 699 A.2d 392 (D.C. 1997).  His conviction was affirmed on direct appeal.  See id.  Petitioner became eligible for parole consideration on September 11, 2004.

**Parole Proceedings**

In 1987, the District of Columbia Parole Board established "point based guidelines to channel its exercise of discretion in deciding whether to award parole."  Puifory v. Reilly, 2009 WL 839354 *2 (M.D. Pa. March 30, 2009).  Under the 1987 guidelines each D.C. offender was assigned a Total Point Score (TPS) which was used to determine when the prisoner should be paroled or scheduled for another parole hearing.  The TPS "did not result in a recommendation of the total time to be served before an offender should be paroled."  Id.

Pursuant to the provisions of National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, § 11231(a), 111 Stat. Ann. 712, 745 (effective date Aug. 5, 1998), Petitioner and all other District of Columbia incarcerated felons were transferred into federal custody.  Under the Revitalization Act, the District of Columbia Parole Board

ceased operation and the United States Parole Commission (Parole Commission) was given broad responsibilities for D.C. offenders such as Bailey. All D.C. offenders reviewed for parole by the Parole Commission after said date were considered under the regulations set forth at 28 C.F.R. § 2.80.

This revised scoring system calculated a salient factor score for determining risk of recidivism. Specifically, the salient factor score assesses the probability that an offender will live and remain at liberty without violating the law. It is then used in conjunction with points added or subtracted for pre - and post-incarceration factors, including whether the prisoner's underlying conviction was a crime of violence or involved the death of a victim to form a base point score which corresponds to a suggested period of incarceration for each inmate to serve prior to release (base guideline range). See Jennings v. Hogsten, 2008 WL 191483 * 1 (M.D. Pa. Jan. 22, 2008).

On September 29, 2004, Petitioner had an initial parole hearing before the Parole Commission which was conducted pursuant to the guidelines established by § 2.80. According to the Initial Prehearing Assessment, Bailey was assigned a salient factor score of 8 and a base point score of 3.[3] See Doc. 48-1, Exhibit B.

The Initial Prehearing Assessment observed that Bailey had

---

[3] There is no claim by the Petitioner that the initial calculation of either his salient factor score or base factor score was erroneous or otherwise improper.

4

committed nine (9) institutional violations while incarcerated.[4]
It was also noted that Bailey's crime involved a high level of
violence.  The assessment further opined that the offense behavior
was arguably more serious because the victim was a stranger and
Petitioner used false pretense to gain entry into her dorm room.
See id. at p. 8.  Finally, it was stated that Petitioner had not
accepted responsibility for his crime, had several violent
confrontations while incarcerated, and had not participated in any
programs to address his behavior.

The September 29, 2004 Hearing Summary (dated October 6, 2004)
noted that Bailey admitted to raping his victim and the commission
of multiple disciplinary infractions.  See id. at Exhibit C.  The
summary acknowledged that Bailey submitted a copy of his college
diploma and had completed some institutional programs.  Without any
objection, Petitioner was assigned a Salient Factor Score of 8 and

---

[4]  Specifically:

| | |
|---|---|
| Aug. 12, 1995 | refusing an order and furtherance of a riot |
| March 3, 1997 | possession of anything not authorized |
| Nov. 27, 1997 | fighting |
| Feb. 21, 1998 | refusing an order |
| March 2, 2001 | fighting |
| June 5, 2001 | possessing intoxicants; refusing a breathalzyer test |
| Sept. 22, 2002 | possession of intoxicants |
| Nov. 3, 2002 | fighting, possession of a dangerous weapon |
| Feb. 1, 2003 | encouraging a group demonstration, refusing to obey an order |

a base Point Score of 3.  The Hearing Summary similarly pointed out that Bailey had not involved himself in any programs addressing his criminal activity.  There was no recommendation for a departure from the guidelines and it was also suggested that a reconsideration hearing be convened in September, 2007.

Thereafter, the Parole Commission's Executive Reviewer observed on October 20, 2004 that "an above the guidelines decision will be warranted in the future because the SFS (Salient Factor Score) does not indicate 2 rapes in a short period of time.  Id. at p. 14.

By Notice of Action dated October 22, 2004, Bailey was denied parole and his case was continued to a three year reconsideration hearing in 2007.  See id. at Exhibit D.  A decision outside the guidelines was not found to be warranted at that juncture.

On June 19, 2007, Bailey's reconsideration hearing was conducted.  The Hearing Summary recognized that Petitioner had received a disciplinary charge of fighting with another person on June 29, 2006.  See id. at Exhibit E.  During that altercation, Petitioner was allegedly in possession of a homemade sharpened metal stabbing device.  According to the hearing Summary, Petitioner admitted his involvement in the underlying criminal offense and expressed remorse.  Bailey also stated that he could not attend a sex offender program because there was none offered at his place of confinement (USP-Pollock),  It was recommended that a

6

departure from the guidelines was not warranted and that Petitioner be paroled on November 6, 2008 with drug and sex offender aftercare.

However, the Executive Reviewer disagreed with that recommendation stating that an upward departure from the guidelines was warranted because this was an exceptional case due to the gravity of Bailey's offense because he was wanted for another rape and the great trauma suffered by the victim. See id. at. p. 20. A second reviewing examiner recommended that a decision should be deferred for up to 90 days pending notification to the victim. By Notice dated July 12, 2007 the Parole commission deferred its decision for 90 days. See id. at Exhibit F.

The second reviewing examiner later stated by Memorandum dated September 21, 2007 that he also had strong concerns about releasing Bailey due to the fact that he was a more serious risk then indicated by his base point score as demonstrated by the facts that he was wanted for another rape at the time he committed his offense; the crime involved the rape of a stranger; and his failure to complete sex offender programming. See id. at Exhibit G. The second reviewing examiner concurred that an upward departure from the guidelines was warranted.

By Notice of Action dated October 11, 2007, the Parole Commission denied parole for Bailey and ordered a rehearing in 2010. See id. at Exhibit H. The Notice stated that a decision

above the Total Guideline range was warranted because based upon the circumstances of his case (the same factors cited by the second reviewing examiner's above describe memorandum), Bailey was a more serious risk then indicated by his Base Point Score.[5]

In <u>Sellmon v. Reilly</u>, 551 F. Supp. 2d 66 (D. D.C. 2008), a decision rendered by the United States District Court for the District of Columbia, it was held that the Parole Commission's application of its 2000 paroling guidelines for D.C. offenders violated the <u>Ex Post Facto</u> Clause. Under <u>Sellmon</u>, the parole review guidelines established by the District of Columbia Parole Board and which were in place at the time D.C. offenders, such as Bailey, committed their crimes must be applied.[6]

Petitioner's next parole hearing was convened on December 16, 2009. During this proceeding, the Parole Commission applied the relevant guidelines of the D.C. Parole Board in accordance with <u>Sellmon</u>. A copy of that Hearing Summary has also been submitted for consideration by this Court. <u>See id</u>. at Exhibit I. It indicates that when questioned, Petitioner maintained that he had

---

[5] The Parole Commission stated that Bailey had raped a female victim who was not acquainted with him at a time when there was an outstanding Warrant for his arrest based on another rape in Baltimore, Maryland. It was again noted that Petitioner had not completed any programs that would reduce the risk that he would commit similar offense if released on parole.

[6] Since Petitioner committed his crime after enactment of the 1987, 1991, and 1992 guidelines, all of those requirements are applicable in his case under <u>Sellmon</u>.

consensual sex with the victim.  Bailey also contended that he had been unable to participate in institutional programming for the past 2 years because he had needed 4 months to recover from a stabbing injury and was moved to another federal correctional facility.[7]  The Hearing Summary recognized that since his last review Petitioner had received and been found guilty of a 2008 disciplinary charge of threatening bodily injury and a 2009 charge of interfering with security devices and assaulting without serious injury.  The initial hearing examiner recommended that Bailey shoule be paroled with drug and sexual offender aftercare upon his completion of a Challenge program which he was then enrolled.[8]

Although the initial hearing examiner recommended a parole effective date of September, 2010 the executive hearing reviewer disagreed, finding that there was a reasonable probability that Petitioner would not obey the law if released and would endanger the public.  See id., at pp. 28-29.  This determination was premised upon Petitioner's failure to complete any programs which would address the underlying cause of his criminal conduct.  Other factors which were cited were Bailey's refusal to accept responsibility for his criminal acts and his two recent incident reports for threatening bodily injury and assault.  Based upon

---

[7]   However, the summary observed that petitioner had not even placed an application for programming.

[8]   Clearly the initial hearing examiner concluded that a departure from the guidelines was not warranted.

9

those factors, the executive hearing reviewer recommended a

departure from the guidelines with a rehearing in two years

(December 2011).

By non-appealable Notice of Action dated March 1, 2010, the

Parole Commission again denied Bailey parole and scheduled a

reconsideration hearing for December, 2011.[9]  See id. at Exhibit K.

The Notice stated as follows:

> The Commission has applied the D.C. Board's 1987 parole
> guidelines to the initial parole decision in your case.
> You have a total point score of 2 under the guidelines
> for D.C. Code offenders.  The guidelines indicate that
> parole should be granted at this time.  However, a
> departure from the guidelines at this consideration is
> found warranted because the Commission finds there is a
> reasonable probability that you would not obey the law if
> released and your release would endanger the public
> safety.  You are a more serious parole risk than shown by
> your point score because you have not completed any
> programs that address the underlying cause of your
> criminal conduct of rape.  At the time you committed the
> rape offense in the District of Columbia there was an
> outstanding warrant for your arrest based on another rape
> in Baltimore, MD.  You have continued to deny the offense
> conduct in the District of Columbia by stating that you
> only had consensual sex with your victim and you have
> never expressed an interest in participating in relevant
> programming to address the criminal conduct that led to
> the current period of confinement.  In addition, over the
> past 2 years, you have completed no other rehabilitative
> programs that would indicate your risk to the community
> has lessened.  However, during this time you have
> continued to incur incident reports for threatening and
> assaultive conduct.  At this time, the Commission
> believes you are not suitable for release on parole and
> is believes that a decision outside both the guideline to

---

[9]   This matter was filed approximately one year later during
March, 2011 and became ripe for consideration prior to December
2011.  Since Petitioner is still incarcerated at USP-Big Sandy it
is presumed that he has again been denied parole.

> parole and the normal rehearing schedule is appropriate.
> It is expected that you will participate in programs
> between now and your next rehearing with emphasis on
> programs that address your confining offense.  In
> addition, it is expected that you will receive no new
> incident reports.

Id. at p. 31.

## Pending Claims

With respect to Bailey's initially filed action, the District
of Columbia's February 15, 2011 Memorandum and Order described that
matter as partially asserting that the Parole Commission
impermissibly relied upon federal standards and or the 2000 Parole
Commission guidelines and other reasons to depart from the 1987 &
1991 D.C. guidelines. See Doc. 30, p. 5.  The Memorandum further
explained that Petitioner was contending that the Parole Commission
applied newer guidelines ex post facto instead of applying the 1987
and 1991 D.C. guidelines in making a determination as to Bailey's
parole suitability. See id. at p. 6.

Petitioner's second action similarly maintains that the Parole
Commission made a decision to upwardly depart from the guidelines
for reasons not listed in either the 1987 or 1991 D.C. guidelines.
Bailey claims that criteria which was not in effect when he
committed his crime was improperly used a basis for the upward
departure.  For instance, the Parole Commission cited his risk to
commit future crimes if released when such a consideration was
contrary to the 1987 guidelines.  Petitioner next contends that the

Parole Commission applied an offense severity factor despite the fact that the 1987 guidelines mandated that the court imposed sentence should serve as the offense severity factor. Petitioner further argues that it was improper for the Parole Commission to consider federal parole guidelines factors such as the gravity of his criminal offense and his lack of accountability in rendering its determination. He further states that because there was no sex offender treatment available during his 2008 confinement at USP-Coleman, his failure to complete such programming should not have been held against him and that the Parole Commission erred by permitting the consideration of all disciplinary infractions[10] as negative institutional behavior.[11]

## Discussion

Respondent seeks dismissal of Petitioner's action on the grounds that: (1) it properly applied the D.C. 1987, 1991, and 1992 guidelines in accordance with Sellmon; (2) Petitioner's

---

[10] Petitioner contends that only disciplinary infractions involving murder, manslaughter and armed robbery can be used as a justification for departure from the D.C. guidelines.

[11] Bailey asserts that the Notice of Action being challenged in this action erred by not setting a parole reconsideration hearing until December, 2011.

D.C. Mun. Regs. tit. 28, § 104.11 states that "Notwithstanding any other provision of this section, the Board may order a reconsideration date it determines to be appropriate." More importantly, since there is no indication that Petitioner's December 2011 parole review was not conducted, this claim is subject to dismissal on the basis of mootness.

disciplinary infractions, lack of accountability, and the gravity of his offense  were properly considered as a basis for an upward departure from the Guidelines; and (3) it was appropriate to consider Petitioner's failure to complete sex offender treatment.

## Standard of Review

Title 28, United States Code § 2241, vests the federal district courts with jurisdiction to grant a writ of habeas corpus to persons in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(c)(3).

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Similarly, the parole laws and regulations developed by the District of Columbia do not give rise to any constitutionally protected interest.  Ellis v. District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996) ("the regulations do not give any prisoners a liberty interest in parole").  The District of Columbia Court of Appeals has also determined that habeas corpus review of the denial of parole to a D.C. inmate "is limited to a review of the procedures used by the Board."  Smith v. Quick, 680 A.2d 396, 398 (D.C. Cir. 1996).

A federal court's review of a decision issued by the Parole Commission is limited to an abuse of discretion standard.  A

13

federal district court needs only to consider whether the record provides a rational basis for the Parole Commission's ruling. Gambino v. Morris, 134 F.3d 156, 160 (3d Cir. 1998). It must ensure that the Parole Commission has followed appropriate criteria and that its "decisions are neither arbitrary and capricious nor based on impermissible considerations." Id. (citation omitted). Furthermore, the Third Circuit Court of Appeals has noted that, when the Parole Commission issues any written determinations, it "must reveal reasoning and not simply present conclusions, at least where the reasoning is not apparent from the facts of the case." Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988) (emphasis in original); see also Greene v. United States Parole Comm'n, 749 F. Supp. 650, 654 (M.D. Pa. 1990). The Court of Appeals in Marshall added that "Congress has required the Commission to furnish a statement of reasons to the prisoner so that he can receive 'an understandable explanation of his parole status.'" Id. at 942 (citations omitted).

Finally, the appropriate remedy when the Parole Commission exceeds its discretion is to remand the matter to the agency for further proceedings consistent with the court's opinion. See Mickens-Thomas v. Vaughn, 355 F.3d 294, 309-10 (3d Cir. 2004).

**Ex Post Facto**

Bailey's ex post facto claim seeks federal habeas corpus relief on the basis that the Parole Commission impermissibly relied

upon federal standards and or the 2000 Parole Commission guidelines and other reasons to depart from the 1987 & 1991 D.C. guidelines. Petitioner explains that the Parole Commission applied newer guidelines ex post facto instead of applying the 1987 and 1991 D.C. guidelines in making a determination as to his parole suitability

A new law or policy violates the Ex Post Facto Clause when it is applied to events which occurred prior to its enactment and disadvantages the offender affected by it. Weaver v. Graham, 450 U.S. 24, 29 (1981). "One function of the Ex Post Facto Clause is to bar enactments, which by retroactive operation increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000); Puifory v. Reilly, 2009 WL 839354 *5 (M.D. Pa. March 30, 2009)(retroactive application of a parole regulation which creates a significant risk of increasing the prisoner's incarceration may violate the ex post facto prohibition); Bonilla v. Vaughn, 1998 WL 480833 *7 (E.D. Pa. 1998)(retroactive application of a change in parole laws if applied rigidly or mechanically can constitute an ex post facto violation).

Clearly, the Parole Commission "must determine the inmate's parole eligibility pursuant to the District of Columbia guidelines in place at the time the offense was committed. Hunter v. U. S. Parole Comm., 2011 WL 4528469 * 2 (M.D. Pa. Sept. 28, 2011).  As previously noted, the Parole Commission's March 1, 2010 Notice of Action, in accordance with the Sellmon decision, undisputably

states that the D.C. Parole Board's 1987 parole guidelines were applied in rendering that decision.

Since Bailey's offense occurred after enactment of the 1991 and 1992 D.C. policy guidelines those provisions were also applicable in Petitioner's case under the dictates of <u>Sellmon</u>. Under the 1987 guidelines the Parole Commission is granted discretion to depart from the guidelines. <u>See</u> D.C. Mun. Regs. Tit. 28 § 204.22. Moreover, as explained by the 1992 policy guidelines the Board is not limited to the aggravating and mitigating factors set forth in the regulations. Based upon those considerations, there is no basis for a conclusion that Bailey's 2010 adverse parole decision resulted from a retroactive application of a parole regulation or that an <u>ex post facto</u> violation otherwise occurred due to considerations not expressly cited in the applicable D.C. guidelines.

**Guideline Departure**

The D.C. Code and D.C. regulations establish that parole decisions are within the discretion of the Parole Commission. <u>See</u> D.C. Code 24-404(a)(stating that when a prisoner meets certain criteria, "the Commission **may** authorize his release on parole")(emphasis added);D.C. Mun. Regs. Tit. 28 § 200.1 ("In accordance with D.C. Code § 24-204 the Board shall be authorized to release a prisoner on parole in its discretion ...")(emphasis added).

16

Thus, even if the Parole Commission found that Bailey satisfied everything required under the 1987 D.C. guidelines, it still had the discretion to deny parole. <u>Ellis v. District of Columbia</u>, 84 F.3d at 1413, 1415 (D.C. Cir. 1996). Since the Parole Commission was vested with the discretion to depart from the guidelines, federal habeas corpus relief is only available if the parole authorities engaged in arbitrary or irrational decision-making.

Petitioner maintains that it was improper for the Parole Commission to consider federal parole guidelines factors such as the gravity of his criminal offense and his lack of accountability in rendering its upward departure determination. He further claims that because there was no sex offender treatment available during his 2008 confinement at USP-Coleman, his failure to complete such programming should not have been held against him and that the Parole Commission erred by permitting the consideration of all disciplinary infractions[12] as negative institutional behavior.

The 1987 D.C. guidelines afford substantial discretion in granting or denying parole. <u>Ellis</u>, 84 F. 3d at 1416. Second, the factors listed as to be considered when denying parole is non-exhaustive. Moreover, the Parole Commission can use the <u>nature</u> of a D.C. prisoner's conviction as a basis for exceeding parole

---

[12]   Petitioner contends that only disciplinary infractions involving murder, manslaughter and armed robbery can be used as a justification for departure from the D.C. guidelines.

guidelines, even if the  conviction was used in his sentence computation pursuant to the guidelines.  See Muhammad v. Mendez, 200 F. Supp.2d 466, 473  (M.D. Pa. 2002); Jennings v. Hogsten, 2008 WL 191483 * 4-5 (M.D. Pa. Jan. 22, 2008) (consideration of similar factors to those relied upon in the present case such as the applicant is a more serious risk than his TPS indicated as grounds for an upward departure are within the discretion afforded the Parole Commission and provided a permissible rational basis to exceed the guidelines).

The challenged March 1, 2010 Notice of Action noted that Petitioner continued to deny that he had committed the rape offense.[13]  This Court agrees that Sellmon arguably recognized that offense accountability is an impermissible basis for exceeding the recommended range of service.  See Sellmon, 551 F. Supp. 2d at 88. Rather, "the parole decision should be limited to consideration of the offender's risk of recidivism and institutional conduct." Cambrel v. Bledsoe, 2011 WL 3439199 * 10 (M.D. Pa. Aug. 5, 2011). However, in the present case offense accountability, although mentioned, is not described as being the basis for the denial of parole by the Notice of Action challenged herein.

Rather, the Notice asserts that Bailey's failure to complete institutional programming addressing the underlying cause of his

---

[13]  The record indicates that when previously considered for parole release, Bailey admitted to committing the offense.

rape conviction and his incident reports during the past two years, i.e, since his last parole review are listed as being the factors behind the adverse decision.  Moreover, notwithstanding any incorrect mentioning of Petitioner's refusal to accept responsibility for his criminal conduct, the Parole Commission cited permissible and legitimate reasons for denying parole, namely the failure to participate in relevant sex offender programming and his recent disciplinary infractions.

The Parole Commission may rely upon negative institutional behavior that occurred since the preceding release consideration. Accordingly, consideration by the Parole Commission of Bailey's 2008 disciplinary charge of threatening bodily injury and his 2009 charge of interfering with security devices and assaulting without serious injury were properly taken into consideration.

Factors such as involvement in institutional programming may also be properly considered when making parole decision for District of Columbia offender.  Hunter, 2011 WL 4528469 * 7. Moreover, the 1987 D. C. guidelines includes as factors "countervailing a recommendation to grant parole ... whether the offender had the opportunity, but made little or no effort toward rehabilitation or preparation from remaining crime free if released to the community; and the offender needs programs and/or rehabilitative services to minimize risk to the community when actually released on parole."  Ellis, 84 F.3d at 1416.

It has also been recognized that sex offender programs serve valid rehabilitative purposes. McKune v. Lile, 536 U.S. 24, 48 (2002); Thorpe v. Grillo, 80 Fed. Appx. 215, 219 (3d Cir. 2003). Although Petitioner may have been unable to obtain sex offender treatment programming during the period of time that he was held at USP-Coleman,[14] Bailey was admittedly housed at multiple federal correctional facilities and his failure to complete a sex offender program when such programming was first recommended in his case as far back as his initial parole review in 2004 and thereafter at his subsequent parole reviews cannot be excused. Bailey's prolonged failure to participate in such appropriate sex offender programming was properly considered by the Parole Commission and constituted a rational basis for the conclusion that Petitioner posed a risk to the community if released.

Finally, it is noted that the challenged adverse parole determination was set forth via a written decision which clearly and concisely provided Bailey with a rational basis underlying its adverse determination and an understandable explanation as to why he was being denied parole. See generally Furnari v. Warden Allenwood Fed. Corr. Inst., 218 F. 3d 250, 254 (3d Cir. 2000).

---

[14]  The Parole Commission lacks authority to ensure that inmates are housed at facilities having programs designed to improve their prospects of parole. Rather, it is their duty to assess the risk posed by a parole applicant and recommend that the prisoner complete any appropriate treatment program.

**Conclusion**

In conclusion, Petitioner's arguments that the Parole commission committed an _ex_ _post_ _facto_ violation and lacked the discretion to depart from the guidelines and deny him parole are unavailing.   Accordingly, the request for federal habeas corpus relief will be denied.

Based upon the Court's conclusion herein Petitioner's motions requesting that officials at USP-Big Sandy be held in contempt (Docs. 63 & 68) for interfering with his right of access to the courts will be dismissed without prejudice.   Bailey may reassert any claims of constitutional misconduct against USP-Big Sandy officials in a civil rights action with a court having proper jurisdiction.

In addition, Petitioner's motion seeking an evidentiary hearing (Doc. 69); for an order to show cause (Doc. 60); and for leave to engage in discovery (Docs. 58 & 70) will be dismissed as moot.   Finally, since Petitioner has not made a substantial showing of the violation of a constitutional right in connection with challenged adverse parole decision, there is no basis for the issuance of a certificate of appealability.   An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: NOVEMBER 26th, 2012